UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 16-609(DSD/TNL)

TripleTree, LLC,

   Plaintiff,

v.                **ORDER**

Nathan Walcker,
Leerink Partners LLC,
and Ryan Stewart,

   Defendants.

   John F. Kennedy, Esq. and Taft Stettinius & Hollister, 111 East Wacker Drive, Suite 2800, Chicago, IL 60601, counsel for plaintiff.

   William Z. Pentelovitch, Esq. and Maslon LLP, 90 South 7th Street, Suite 3300, Minneapolis, MN 55402, counsel for defendants.

This matter is before the court upon the motion for a temporary restraining order (TRO) by plaintiff TripleTree, LLC. The court denied plaintiff's TRO motion from the bench with this written order to follow. The court then sua sponte issued an order to show cause as to whether the case should be dismissed. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court dismisses the case with leave to file in state court.

**BACKGROUND**[1]

This trade secret dispute arises from defendant Nathan Walcker's resignation from his position as associate at TripleTree on February 26, 2016. Compl. ¶¶ 61, 64 105. TripleTree is a Minnesota-based merchant bank that engages in investment banking and principal investing in the healthcare industry. Id. ¶¶ 1, 13. Walcker left TripleTree to join competitor Leerink Partners LLC, which is headquartered in Boston. Id. ¶¶ 4, 106.

In May 2014, Walcker, then an MBA student, began working for TripleTree as a summer intern. Id. ¶ 56. At the outset of the internship, Walcker signed a confidentiality and nonsolicitation agreement which prohibits the disclosure of confidential and proprietary information to third parties both during and after employment with TripleTree. Id. Ex. A. Walcker also acknowledged receipt of the TripleTree employee manual, which repeats the company's confidentiality policy and instructs employees on use of network resources. Id. Exs. C-D. At the end of the summer, TripleTree and Walcker agreed to extend the internship through the school year and TripleTree offered Walcker a full-time position upon graduation. Compl. ¶ 60. Walcker accepted. Id. ¶ 61. Walcker began his full-time position with TripleTree on June 15,

---

[1] The court will focus on the allegations directly relevant to the federal claim at issue and thus will not discuss the allegations against defendants Leerink Partners LLC and Ryan Stewart.

2015. Id. ¶ 64.

At some point, Walcker began exploring job opportunities with several TripleTree competitors, including Leerink. Walcker resigned on February 26, 2016, and was immediately escorted from the premises. Id. ¶¶ 105-107. Thereafter, TripleTree did a forensic analysis of Walcker's digital work history. According to TripleTree, the forensic analysis revealed the following alleged misconduct by Walcker between February 15, 2016, and February 26, 2016:

- Arriving before official business hours and returning to the office after the office was closed for the day. Id. ¶¶ 77, 97, 98, 102.

- Accessing sensitive files that TripleTree alleges were not relevant to his job. Id. ¶¶ 79, 88, 92, 96.

- Placing dozens of files in his desktop's recycle bin. Id. ¶ 84.

- Attempting to connect an external hard drive to his work computer. Id. ¶¶ 80-82.

- Accessing his personal email account from his work computer, while also working in TripleTree's secure database. Id. ¶¶ 83, 90.

- Accessing Leerink recruiting files and emailing Leerink about prospective employment from his work computer. Id. ¶¶ 85-87.

- Attending confidential meetings at TripleTree after he knew he was going to resign. Id. ¶ 91.

- Having TripleTree configure a BlackBerry device to include access to TripleTree's data four days before his resignation. Id. ¶ 93.

- Reporting that the BlackBerry is "no longer available" just one day before his resignation. Id. ¶ 99.[2]

- Creating a document using TripleTree's "highly proprietary and confidential" information the day before his resignation. Id. ¶ 100.[3]

- Deleting over 200 files, many of which he did not need to perform his job, just before resigning. Id. ¶¶ 103-04.

On March 9, 2016, TripleTree filed the instant complaint alleging that Walcker violated the Federal Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030(a)(2)(C), and the Minnesota Uniform Trade Secrets Act, Minn. Stat. § 325C.01 et seq., and breached the confidentiality and non-solicitation agreement and his fiduciary duty. TripleTree alleges that Leerink and Stewart breached and tortiously interfered with various contracts. TripleTree also immediately moved for an ex parte TRO asking the court to (1) enjoin defendants from using TripleTree's confidential and proprietary information; (2) require defendants to return any TripleTree data in their possession, custody or control; (3) require defendants to preserve communications among defendants from January 1, 2016, to the present; and (4) enjoin Walcker from working at Leerink in any capacity.

---

[2] Although it has not been able to analyze the BlackBerry, TripleTree acknowledges that the BlackBerry has not "interfaced" with TripleTree since the evening of February 25, 2016. Id. ¶ 99.

[3] TripleTree acknowledges, however, that the document was "never sent to or accessed by any individuals outside of TripleTree." Id. ¶ 101.

4

The court declined to proceed ex parte. After full briefing and oral argument, the court denied the motion from the bench. In so ruling, the court relied on the four familiar factors set forth in Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc). Specifically, the court determined that TripleTree had not met its burden of establishing the need for the extraordinary remedy of temporary injunctive relief because the balance of harms, likelihood of success on the merits, and the public interest essentially weigh in favor of defendants. The court, in particular, noted the extreme hardship that would befall Walcker if the court were to preclude him from earning a living in his chosen profession. See Int'l Bus. Mach. Corp. v. Seagate Tech., Inc., 941 F. Supp. 98, 101 (D. Minn. 1992) ("[I]n the absence of a covenant not to compete or a finding of actual or an intent to disclose trade secrets, employees 'may pursue their chosen field of endeavor in direct competition' with their prior employer."); Katch, LLC v. Sweetser, No. 15-CV-3760, 2015 WL 6942132, at *10 (D. Minn. Nov. 10, 2015)("[A] person's right to labor in any occupation in which he is fit to engage is a valuable right, which should not be taken from him, or limited, by injunction, except in a clear case showing the justice and necessity therefor."). The court also noted that any harm to TripleTree could likely be remedied through damages, rather than injunctive relief. The court now turns to the order to show cause.

**DISCUSSION**

As the court noted at the hearing, the issue of whether TripleTree has a viable claim under the CFAA, and thus whether the court has jurisdiction over this matter, is a threshold issue appropriate for early determination.  The parties, perhaps misunderstanding the court, focused their briefing on whether dismissal is warranted under Rule 12(b)(1).  Although the court's jurisdiction is ultimately at issue, it cannot be decided until the court determines the viability of the CFAA claim, the sole federal claim in this case.  As a result, the court believes that the proper approach is to first consider the matter under Rule 12(b)(6).[4]

**I.   Standard**

To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A

---

[4] Defendants submitted lengthy affidavits in support of their position.  Such evidence would be appropriate in a factual attack on the court's jurisdiction under Rule 12(b)(1).  See Branson Label, Inv. v. City of Branson, Mo., 793 F.3d 910, 914-15 (8th Cir. 2015) (recognizing that in a factual attack on the court's jurisdiction, "matters outside the pleadings, such as testimony and affidavits, are considered").  Because the court will proceed under Rule 12(b)(6), however, it will not consider the affidavits.  The court also declines to consider the matter under Rule 56(a) given that there has been no opportunity for discovery.

claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

**II. CFAA**

The CFAA subjects a person who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains ... information from a protected computer" to imprisonment and a fine. 18 U.S.C. § 1030(a)(2)(C). A protected computer is any computer used in or affecting interstate commerce. Id. § 1030(e)(2)(B). Congress provides a civil cause of action under the CFAA in certain circumstances. Id. § 1030(g). Congress does not define "without authorization" but defined "exceeds authorized access" to mean "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." Id. § 1030(e)(6).

The Eighth Circuit has not determined whether the CFAA imposes civil liability on employees who access information with permission, but with an improper purpose. This court has adopted a narrow view and focuses on the scope of access rather than misuse or misappropriation of information. See Lube-Tech Liquid Recycling, Inc. v. Lee's Oil Serv., LLC, No. 11-2226, 2013 WL 2420448, at *3 (D. Minn. June 3, 2013); Sebrite Agency, Inc. v. Platt, 884 F. Supp. 2d 912, 917-18 (D. Minn. 2012); Walsh Bishop Assocs., Inc. v. O'Brien, No. 11-2673, 2012 WL 669069, at *2-3 (D. Minn. Feb. 28, 2012); Xcedex, Inc. v. VMware, Inc., No. 10-3589, 2011 WL 2600688, at *4 (D. Minn. June 8, 2011), adopted by 2011 WL 2581754, at *1 (D. Minn. June 30, 2011); Condux Int'l, Inc. v. Haugum, No. 08-4824, 2008 WL 5244818, at *4-6.

Any other interpretation would require the court to rewrite the statute to replace the phrase "to use such access to obtain or alter information that the accesser is not entitled so to obtain or alter" with "to use such information in a manner that the accesser is not entitled so to use." But subsection (a)(2) is not based on use of information; it concerns access. Indeed, the language of subsection (a)(1) shows that Congress knows how to target the use of information when it intends to do so. See id. § 1030(a)(1) ("Whoever having knowingly accessed a computer without authorization or exceeding authorized access, and by means of such conduct having obtained information ... causes to be communicated,

8

delivered, or transmitted ... to any person not entitled to receive it ...."); Condex, 2008 WL 5244818, at *5.

Further, the legislative purpose and history supports the plain meaning of the statute as adopted by the court. Congress enacted the CFAA to deter "the criminal element from abusing computer technology in future frauds." H.R. Rep. No. 98-894, at 4 (1984), reprinted in 1984 U.S.C.C.A.N. 3689, 3690. As originally enacted, the CFAA applied to a person who (1) knowingly accessed without authorization or (2) "having accessed a computer with authorization, uses the opportunity such access provides for purposes to which such authorization does not extend." Pub. L. No. 98-473, § 2102, 98 Stat. 2190, 2190-91 (1984). Congress amended the statute by replacing the latter means of access with the phrase "exceeds authorized access." See Pub. L. No. 99-474, § 2, 100 Stat. 1213, 1213 (1986). The stated reason for the amendment was to "eliminate coverage for authorized access that aims at purposes to which such authorization does not extend." See S. Rep. No. 99-432, at 21 (1986), reprinted in 1986 U.S.C.C.A.N. 2479, 2495 (internal quotation marks omitted). As a result, Congress amended the statute to remove use as a basis for exceeding authorization.

Further, no language or history concerning the CFAA suggests that Congress intended to provide a federal cause of action for state-law breach of contract, fiduciary duty, trade secret or other business-tort claims. Therefore, the court turns to whether

TripleTree's complaint plausibly alleges that Walcker accessed information he was forbidden to access.

TripleTree first argues that Walcker violated the statute because his authorization was automatically revoked when he decided to work for a competitor. TripleTree cites to no factual or legal support for that proposition, and the court has found none. Indeed, if TripleTree's position were adopted, every person who uses a computer in their employment could violate the CFAA by simply looking for another job.

TripleTree next argues that the employee manual restricted Walcker's access and made his acts unlawful. The court disagrees. The court has already determined that subsection (a)(2) of the CFAA applies to access rather than use. The employee manual proscribes certain uses of information, but does not restrict Walcker's scope of access. See Compl. Ex. C, at 10 ("The only use by an employee of TT's network resources which is authorized is that which is necessary for the employee to perform his or her assigned duties.") (emphasis added); see also id. at 11 ("It is a violation of TT's policies ... to engage in the use of TT's network resources in any way that is not necessary for the performance of his or her assigned duties ...."). Despite TripleTree's arguments to the contrary, the complaint does not actually allege that Walcker accessed documents he had no permission to access. Instead, TripleTree alleges that Walcker accessed documents that were

10

unrelated to his work or that he had "no reason" to access. See Compl. ¶¶ 79, 88, 92, 96. In other words, TripleTree alleges that Walcker's use exceeded his authority, not that he exceeded his authority in accessing certain documents.[5]  See Condux, 2008 WL 5244818, at *4 ("[W]ithout authorization refers to persons below authorization, meaning those having no permission to access whatsoever.") (internal quotations omitted). As a result, TripleTree fails to allege facts from which the court could infer a plausible claim for violation of the CFAA.[6] The court therefore dismisses the CFAA with prejudice.

**III. State Law Claims**

Because the court has dismissed TripleTree's federal claim, the only claim for which original jurisdiction existed, the court must consider whether to exercise supplemental jurisdiction over the remaining state-law claims. See 28 U.S.C. § 1367(c)(3); Johnson v. City of Shorewood, Minn., 360 F.3d 810, 819 (8th Cir. 2004). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered

---

[5] TripleTree's allegation that Walcker attempted to connect a hard drive to its network is likewise insufficient to plausibly allege unauthorized access. The hard drive, even if prohibited, simply allowed Walcker to use the network data on a computer other than his work computer. Although such use may be unauthorized, it did not exceed Walcker's access to the data.

[6] TripleTree generally alleges that Walcker "exceeded his authorized access" but such conclusory allegations are insufficient to state a claim. Iqbal, 556 U.S. at 678.

11

under the pendent jurisdiction doctrine - judicial economy, convenience, fairness, and comity - will point toward declining to exercise jurisdiction over the remaining state-law claims." Dodson v. Univ. of Ark. for Med. Scis., 601 F.3d 750, 756 (8th Cir. 2010) (per curiam) (quoting Carnegie-Mellon Univ. v. Cahill, 484 U.S. 343, 350 n.7 (1988)); see also Kapaun v. Dziedzic, 674 F.2d 737, 739 (8th Cir. 1982) ("The normal practice where federal claims are dismissed prior to trial is to dismiss pendent claims without prejudice, thus leaving plaintiffs free to pursue their state-law claims in the state courts.").

Based on consideration of the pendent jurisdiction factors, the court will not exercise its discretion to take supplemental jurisdiction over the state-law claims. The remaining claims depend solely on determinations of state law. See Farris v. Exotic Rubber and Plastics of Minn., Inc., 165 F. Supp. 2d 916, 919 (D. Minn. 2001) ("State courts, not federal courts, should be the final arbiters of state law.") (quoting Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1353 (11th Cir. 1997)). Further, the parties have yet to engage in discovery and the court has not yet expended substantial resources tending to this matter. Under the circumstances, the court is satisfied that declining to exercise supplemental jurisdiction will not harm the parties. Therefore, the court dismisses TripleTree's state-law claims without prejudice.

**CONCLUSION**

Accordingly, based on the above and as stated at the hearing, **IT IS HEREBY ORDERED** that:

1. The motion for a temporary restraining order [ECF No. 8] is denied;

2. TripleTree's claim under the CFAA is dismissed with prejudice; and

3. The case is dismissed with leave to file in state court.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 6, 2016

                                              s/David S. Doty
                                              David S. Doty, Judge
                                              United States District Court